# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **Carlotta Sawyers**, <br><br> Plaintiff, <br><br> v. <br><br> **Credit Central, LLC,** <br><br> Defendant. | JURY DEMAND <br><br><br> Case No. |

# COMPLAINT

**Carlotta Sawyers** (Plaintiff), by and through her attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Credit Central, LLC** (Defendant):

# INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and intentional infliction of emotional distress.

# JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

1

4. This Court has personal jurisdiction over Defendant because Defendant regularly conducts business in the State of Tennessee and because the occurrences from which Plaintiff's cause of action arises took place and caused Plaintiff to suffer injury in the State of Tennessee.

5. Venue is proper under 28 U.S.C. § 1391(b)(2).

**PARTIES**

6. Plaintiff is a natural person residing in Hermitage, TN 37076.

7. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

8. Defendant is a business entity with a principal place of business, head office, or otherwise valid mailing address at 1122 Monticello Street, SW, #14, Covington, GA 30014.

9. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

10. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**FACTUAL ALLEGATIONS**

11. Beginning in or around April 2018, Defendant began calling Plaintiff on her cellular telephone on a repetitive and continuous basis seeking to collect a personal loan.

12. When contacting Plaintiff on her cellular telephone, Defendant used an automatic telephone dialing system and automatic and/or pre-recorded messages.

13. Plaintiff knew Defendant was calling her using an automatic telephone dialing system and automatic and/or pre-recorded messages as she received calls from Defendant that began with a delay or pause prior to a live representative of Defendant coming on the line.

14. Defendant's telephone calls were not made for "emergency purposes."

15. During these calls Plaintiff also told Defendant that she was disabled and suffered from diabetes.

16. She also informed Defendant if she paid the debt she would be unable to afford the treatment she received for her diabetes.

17. Desiring to stop these repeated, unwanted calls, in or around November 2018, Plaintiff spoke to Defendant soon after the calls began and revoked any previous consent that Defendant had to contact her.

18. Defendant heard and acknowledged Plaintiff's instruction to stop calling.

19. Once Defendant was aware that its calls were unwanted and was told to stop calling, there was no lawful purpose to making further calls, nor was there any good faith reason to place calls.

20. Any further calls could only have been placed to harass and upset Plaintiff.

21. Despite Plaintiff's clear demand to refrain from contacting her, Defendant continued to call Plaintiff repeatedly through in or around August 2019.

22. Defendant's incessant calls were bothersome, disruptive and frustrating for Plaintiff to endure.

23. During this same time, Defendant also repeatedly knocked on Plaintiff's apartment door and posted several notices on Plaintiff's front door at her apartment located in Madison, Tennessee in furtherance of its attempts to harass and upset Plaintiff.

24. Defendant also spoke with Plaintiff's landlord and Plaintiff's neighbor in Madison, Tennessee in its efforts to harass and coerce payment from Plaintiff.

25. On or about May 31, 2019, Plaintiff, who is disabled, was forced to move to Hermitage, Tennessee, as the loud knocking, repeated notices on her front door, and communications with her landlord and neighbor caused her embarrassment.

26. Soon after moving to her new address in Hermitage, Tennessee, Plaintiff returned to Madison to visit a restaurant with her fiancé, Timothy Graves.

27. Upon leaving the restaurant, Defendant's agent, who was sitting outside the restaurant in a car, followed Plaintiff and Mr. Graves back to Plaintiff's new apartment in Hermitage, approximately 15 to 20 minutes away, and posted a notice on her front door.

28. Thereafter, Defendant continued posting notices on Plaintiff's door at her new residence, causing Plaintiff great embarrassment.

29. Defendant has also made direct contact with Plaintiff's fiancé, Mr. Graves, while Plaintiff was still residing in Madison, instructing him to "tell his girlfriend to pay her bill."

30. Defendant has also placed calls to Plaintiff's two children.

31. Defendant's conduct led to Plaintiff becoming depressed, causing her not to eat, and negatively impacting her diabetes.

32. Defendant's actions as described herein were taken with the intent to upset, humiliate and coerce payment from Plaintiff.

## COUNT I
## DEFENDANT VIOLATED THE TCPA

33. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

34. Defendant initiated multiple automated telephone calls to Plaintiff's cellular telephone using an automated message and/or prerecorded voice.

35. Defendant initiated these automated calls to Plaintiff using an automatic telephone dialing system.

36. Defendant's calls to Plaintiff were not made for emergency purposes.

37. Defendant's calls to Plaintiff's cellular telephone after she revoked consent were not made with Plaintiff's prior express consent.

38. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

39. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

40. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

41. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

42. Tennessee recognizes the tort of intentional infliction of emotional distress. Bain v. Wells, 936 S.W.2d 618 (Tenn. 1997). For a plaintiff to establish a claim for intentional infliction of emotional distress, the plaintiff must show that the conduct complained of must be intentional or reckless, the conduct must be so outrageous that it is not tolerated by civilized society, and the conduct complained of must result in serious mental injury. Bain, at 622.

43. Defendant's actions in posting notices and loudly knocking on Plaintiff's door, following her, communicating with third parties, and calling her repeatedly were clearly intentional.

44. Defendant's conduct was extremely outrageous and goes beyond all bounds of decency. Such conduct is utterly intolerable in a civilized society.

45. As a result of Defendant's conduct as described herein, Plaintiff experienced severe public embarrassment.

46. Further, Plaintiff experienced severe mental injuries as a result of Defendant's conduct. Plaintiff experienced an extreme amount of stress from the frequent calls, notices posted to her door, third party communications, and agent that followed her home from a restaurant. Plaintiff also had many sleepless nights because of this extreme stress and worry. This extreme amount of stress and worry resulted in Plaintiff experiencing serious mental injury.

47. Defendant's actions were made intentionally, willfully, maliciously, and/or recklessly without regard for the rights of Plaintiff

48. Plaintiff is entitled to recovery of punitive or exemplary damages for the intentional, willful, malicious and/or reckless actions of Defendant.

**Wherefore**, Plaintiff, **Carlotta Sawyers**, respectfully prays for judgment as follows:

a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

b. Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c. Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

d. Injunctive relief (as provided under 47 U.S.C. § 227(b)(3));

e. Compensatory damages for Intentional Infliction of Emotional Distress in the amount of $2,500,000;

f. Punitive damages in the amount of $5,000,000; and

g. Any other relief this Honorable Court deems appropriate.

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Carlotta Sawyers**, demands a jury trial in this case.

Respectfully submitted,

Dated: March 27, 2020

By: *s/ Amy L. Bennecoff Ginsburg*
Amy L. Bennecoff Ginsburg, Esq.
Tennessee BPR No. 028563
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
Phone: 215-540-8888
Facsimile: 877-788-2864
Email: aginsburg@creditlaw.com